

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALANNA SCHWARTZ, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 04 C 2377 |
| v. | ) ) |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), Plaintiff Alanna Schwartz filed a one-count Complaint against Defendant Prudential Insurance Company of America ("Prudential") based on Prudential's denial of long-term disability benefits. Before the Court are the parties' Cross-Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.[1]

## BACKGROUND

### I. Introduction

Plaintiff Alanna Schwartz seeks long-term disability benefits under an employee welfare benefit plan ("Plan") that her former employer, Sachnoff & Weaver, Ltd. ("Sachnoff"), maintains

---

[1] In the alternative, Schwartz suggests that the Court conduct a trial on the papers under Federal Rule of Civil Procedure 52. Because the Court grants Defendant's Motion for Summary Judgment, the Court need not address Schwartz's alternative request.

for its employees. (R.18-1, Def.'s Local Rule 56.1 Stmt. ¶¶ 1, 9.) Sachnoff employed Schwartz as a legal secretary from September 2, 1998, through October 31, 2001. (*Id.* ¶ 5; R.16-1, Pl.'s Local Rule 56.1 Stmt. ¶ 7.) The Prudential Insurance Company of America ("Prudential") underwrites Sachnoff's Plan pursuant to the terms of Group Insurance Policy No. G-40370 ("Policy") (Def.'s Stmt. ¶ 1.) ERISA governs the Plan. (*Id.* ¶ 2.)

## II. Plan Provisions

The long-term disability plan at issue defines "disability" for purposes of a claim as follows:

> You are disabled when Prudential determines that:
> 
> - you are unable to perform the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
> 
> - you have a 20% or more loss in your **indexed monthly earnings** due to that **sickness** or **injury**.

(Pl.'s Stmt. ¶ 10; Def.'s Stmt. ¶ 17) (emphasis in original). Under the Plan "material and substantial duties" means duties that:

> - are normally required for the performance of your regular occupation; and
> 
> - cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per work, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

(Pl.'s Stmt. ¶ 10.) Other definitions under the Plan include:

> **Regular occupation** means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.
> 
> **Sickness** means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage, or childbirth. Disability must begin while you are covered under the plan.

2

*Id.* (emphasis in original).

## III. Schwartz's Disability Claim and Prudential's Review

On January 8, 2002, Schwartz filed a claim form and accompanying employer's and attending physician's statements with Prudential seeking long-term disability benefits. (Pl.'s Stmt. ¶ 12; Def.'s Stmt. ¶ 9.) In her claim, Schwartz stated that her last day of work with Sachnoff was on October 30, 2001, and that her occupation of legal secretary was a sedentary position. (Pl.'s Stmt. ¶ 12, Def.'s Stmt. ¶ 11.) Schwartz claimed disability resulting from Crohn's disease, fibromyalgia, and arthritis. (Pl.'s Stmt. ¶ 14.) Schwartz responded to the question, "How does this condition interfere with your ability to perform your job?" by stating, "cannot start at 9 due to pain; cannot sit, stand for more than 20 mins., cannot walk." (*Id.*)

Dr. Gene Neri completed the attending physician's statement and identified fibromyalgia as the "Clinical Diagnosis" of Schwartz's condition. (Def.'s Stmt. ¶ 12; Pl.'s Stmt. ¶ 14.) In response to the section of the statement entitled "Relevant test procedures performed," Dr. Neri indicated "classical clinical presentation." (Def.'s Stmt. ¶ 12, Pl.'s Stmt. ¶ 15.) Dr. Neri also noted that Schwartz "cannot work at all during severe flare ups." (Def.'s Stmt. ¶ 13.) When asked "What Job Category best describes the employee's essential job duties," Dr. Neri checked the box labeled "sedentary." (*Id.*) On its employer statement, Sachnoff indicated that Schwartz's legal secretary position was a sedentary occupation as well. (*Id.* ¶ 15.)

In a letter to Schwartz dated May 29, 2002, Prudential explained to her that it had completed its review of her claim for long-term disability benefits and concluded that she had not met the requirements to receive benefits under the terms of the Policy. (*Id.* ¶ 21; Pl's Stmt. ¶ 34, R.17-1, Parties' Joint Appendix, at 000161-163.) Also, Prudential explained that during its claim review process, it had requested and received medical records from Schwartz's treating

physicians, including Dr. Neri, Dr. Robert Janda, Dr. Ramesh Melvani, Dr. Elena Gogoneata, plus records from Loyola University Hospital. (Def.'s Stmt. ¶ 22.) Prudential denied Schwartz's claim because her medical information indicated "that you have been able to work with your current medial [sic] condition in the past and there is no indication that there has been a significant change in condition that would prevent you from performing your occupation as a legal secretary." (*Id.* ¶ 24; Joint App., at 000162.) The letter also outlined Schwartz's right to appeal Prudential's decision. (Joint App., at 000162.)

## IV. Schwartz's Appeal and Prudential's Review

On July 12, 2002, Schwartz filed a letter expressing her intent to appeal Prudential's denial of long-term disability benefits, which she followed with a more detailed statement of appeal on September 27, 2002. (Def.'s Stmt. ¶ 25.) Schwartz attached to her appeal letter a log of her attendance at work. (*Id.* ¶ 26.) On October 14, 2002, Prudential submitted a copy of Schwartz's medical records to an independent medical examiner – Dr. Grafton Thurman – for analysis. (*Id.* ¶ 28.) In his report, Dr. Thurman indicated that there was mention of trapezius and back tenderness related to Schwartz's fibromyalgia, but no other findings. (Joint App., at 000139.) Further, Dr. Thurman indicated that Schwartz's Crohn's disease was doing well and that she had a small herniated disc in her lumbar spine. (*Id.*) Dr. Thurman concluded that after reviewing the physical examinations and information on file, there was no apparent reason why Schwartz could not participate in sedentary work. (*Id.*)

In a letter to Schwartz dated October 21, 2002, Prudential concluded that there was no documentation of a physical impairment that would prevent her from working as a legal secretary. (*Id.*; Def.'s Stmt. ¶ 29; Pl.'s Stmt. ¶ 37.) Specifically, Prudential stated that Schwartz's physical exams do not reveal any weakness, loss of sensory function, or loss of range of motion. (Joint

App., at 000139.) Prudential, therefore, upheld its decision to deny Schwartz's claim for long-term disability benefits. (Def.'s Stmt. ¶ 29.) Again, Prudential explained the appeal process. (Joint App., at 000139.)

## V. Schwartz's Second Appeal and Prudential's Review

On October 29, 2002, Schwartz submitted a second appeal to Prudential requesting reconsideration of Prudential's determination that she was not disabled under the terms of the Policy. (Def.'s Stmt. ¶ 30; Pl.'s Stmt. ¶ 38.) Schwartz also provided additional medical records from rheumatologist Dr. Aileen Pangan. (Pl.'s Stmt. ¶ 39.) On December 17, 2002, Prudential submitted a copy of Schwartz's medical records, including Dr. Pangan's records, to rheumatologist Dr. David Kneapler for an independent assessment. (Def.'s Stmt. ¶ 31.) Dr. Kneapler confirmed the diagnosis of Crohn's disease, but indicated that Schwartz's file lacked records concerning her claims of lower back pain. (Joint App., at 000229.) Dr. Kneapler also reported that there was no indication of neurological abnormality. (*Id.* at 000231.) Assuming Dr. Gogoneata's and Dr. Pangan's diagnosis of sacroiliitis and ankylosing spondylistis as contributors to Schwartz's back pain, Dr. Kneapler concluded that these conditions would not make Schwartz disabled from her regular occupation with minimum accommodations. (*Id.* at 000231-233.) Prudential's February 27, 2003, letter to Schwartz's counsel upholding its decision to deny Schwartz's claim concluded:

> Based on our review of Dr. Kneapler's report as well as the medical documentation on file, we have determined that the medical evidence does not support impairment form [sic] her regular occupation. Although Ms. Schwartz may continue to have ongoing symptoms from her Crohn's disease and Fibromyalgia, the medical evidence does not support a severity of her condition that would prevent her from performing the duties of her regular occupation with reasonable accommodations as indicated by Dr. Keapler [sic] of a comfortable chair and no prolonged sitting.

(*Id.*) Prudential thus upheld its decision to deny Schwartz long-term disability benefits,

5

explaining the appellate process and deadlines. (Def.'s Stmt. ¶ 32; Pl.'s Stmt. ¶ 42.)

On February 11, 2004, Schwartz submitted additional documentation for Prudential to consider and requested another appeal. (Def.'s Stmt. ¶ 33.) On March 15, 2004, Prudential responded to Schwartz's February 11, 2004, letter stating that the request for an appeal was not sent within the required time period, and thus Prudential would not consider the additional information. (*Id.* ¶ 34.) Prior to filing the present lawsuit, Schwartz submitted additional material to Prudential, including a favorable decision by Judge Dennis Green of the Social Security Administration. (Pl.'s Stmt. ¶ 45.) On March 15, 2004, Prudential declined to reconsider its denial of long-term disability benefits. (*Id.*) On March 31, 2004, Schwartz filed the present lawsuit. (Def.'s Stmt. ¶ 35.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). The Court considers the evidence in a light most favorable to the non-moving party and draws all reasonable inferences in

her favor. *See Anderson,* 477 U.S. at 255.

## ANALYSIS

I.  **Judicial Standard of Review under ERISA**

Under ERISA, the Court reviews a plan administrator's denial of benefits *de novo* unless the plan gives the administrator discretionary authority to determine eligibility. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Militello v. Central States, Southeast & Southwest Areas Pension Fund,* 360 F.3d 681, 685 (7th Cir. 2004). In determining whether the plan administrator has discretionary authority, the Court looks to the Plan's plain language. *See Postma v. Paul Revere Life Ins. Co.,* 223 F.3d 533, 538 (7th Cir. 2000).

Here, under the heading "What Information is Needed as Proof of Your Claim?" the Plan states: "We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor." (Def.'s Stmt. ¶ 18.) The relevant language in the Summary Plan Description ("SPD") states:

> This Group Contract underwritten by The Prudential Insurance Company of America provides insured benefits under your Employer's ERISA plan(s). The Prudential Insurance Company of America as Claims Administrator has sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

(*Id.* ¶ 19).

Schwartz argues that language in the SPD cannot expand Prudential's discretion under the Plan's actual language. Schwartz relies on *Health Cost Controls of Illinois, Inc. v. Washington,* 187 F.3d 703, 711-12 (7th Cir. 1999), in which the policy at issue contained specific language that the plan's language controlled if the plan and SPD were in conflict. Key to this rule of construction is whether a conflict exists between the underlying policy and the SPD. *See id.; see*

7

*also Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1023 (7th Cir. 1998). Here, Schwartz does not explain how the Plan's language and the SPD conflict. Indeed, they do not. As the unequivocal language of the SPD indicates, Prudential has "sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." This language, read in tandem with the Plan's language, confers discretion on Prudential.

Finally, other courts in this district have concluded that language similar to the present Plan language – "We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor" – alone confers discretion. *See Diaz v. Prudential Ins. Co. of Am.*, 2004 WL 1094441 at *6-7 (N.D.Ill. May 13, 2004); *DiPietro v. Prudential Ins. Co. of Am.*, 2003 WL 22159467 at *1-2 (N.D.Ill. Sept. 17, 2003) (citing *Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 379-80 (7th Cir. 1994)). These cases further support the Court's conclusion that the arbitrary and capricious standard applies.[2]

## II. Prudential's Eligibility Determination

Under the arbitrary and capricious standard, the Court's review is limited to the information submitted to the plan's administrator. *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 980-82 (7th Cir. 2000). Under this "highly deferential standard," the Court will not overturn a plan administrator's determination unless it is "downright unreasonable." *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045

---

[2] Schwartz submits correspondence from the chief counsel of the Illinois Department of Insurance to support her argument that the Court's review must be *de novo*. Schwartz's attempt to use this correspondence fails because the Court looks to the plain language of the Plan itself, not outside information or evidence, in determining whether a plan administrator has discretionary authority to determine eligibility. *See Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000).

(7th Cir. 2004); *see also Carr v. Gates Health Care Plan*, 195 F.3d 292, 295 (7th Cir. 1999) ("It is not our function to decide whether we would reach the same conclusion as the Plan or even rely on the same authority.") The Court will not overturn Prudential's decision to deny long-term disability benefits if "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Houston v. Provident Life & Accidental Ins. Co.*, 390 F.3d 990, 995 (7th Cir. 2004) (internal quotations and citation omitted). With these standards in mind, the Court turns to Schwartz's contention that Prudential's determination was unreasonable.

Schwartz makes four arguments for overturning Prudential's determinations: (1) Prudential's review of her fibromyalgia lacked fairness and reason; (2) Prudential unreasonably required her to provide evidence of a worsening condition; (3) Prudential failed to consider her impairments in combination; and (4) Prudential had no basis for its final determination that Schwartz was not disabled. The Court addresses each argument in turn.

### A. Diagnosis of Fibromyalgia

Schwartz first contends that Prudential's initial assessment of her fibromyalgia was unreasonable because Prudential erroneously relied on Dr. Robert MacBride's report in which he concluded that there was no clear evidence of Schwartz's total loss of work capacity. Schwartz specifically objects to Dr. MacBride's conclusion:

> We have a 32 year old legal secretary who has problematically been labeled with a controversial and medically unconfirmable, self-reported illnesses-Fibromyalgia, in the presence of a History of pathosphysiollogically defined (and confirmed) Dx of Inflammatory Bowel disease whose symptoms largely explain those of the alleged self-reported Dx.... It seems that the self-reported illness is now the driving factor

9

in this claim and it is of dubious relevance given the claimant's other definable medical history.

(Joint App., at 000127).

Schwartz argues that because fibromyalgia by its nature is medically unconfirmable, Dr. MacBride's negative assessment of her disability based on this factor is unreasonable. The Seventh Circuit has discussed the condition of fibromyalgia in the context of both ERISA and Social Security claims, defining fibromyalgia as:

> a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

*Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996) (citations omitted) ("Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not...."); *see also Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998) (fibromyalgia not always disabling).

Although Schwartz takes umbrage with Dr. MacBride's report, his remarks concerning the difficulty of confirming a diagnosis of fibromyalgia are not unreasonable considering the mercurial nature of the illness. Further, Dr. MacBride based his opinion on other factors, including gasteroenterologist Dr. Jenda's January 28, 2002, visit note. Dr. Janda described Schwartz as "'feeling well', no abdominal pain, with normal abdominal exam and weight." Consequently, Dr. MacBride concluded that these symptoms were inconsistent with "a current disabling inflammatory bowel disease." (Joint App., at 000127.)

More importantly, Prudential relied on more than Dr. MacBride's report in making its

10

determination concerning Schwartz's impairments and whether she was "disabled" under the Policy. Specifically, Prudential relied on Schwartz's medical records provided by her treating physicians Drs. Gogoneata, Neri, Janda, and Melvani in concluding that her medical records did not disclose any medical-determinable impairment or combination of impairments that would prevent Schwartz from working. (Joint App., at 000129, 000162.) Therefore, Prudential provided a reasonable basis for denying benefits based on evidence in the record. *See Houston,* 390 F.3d at 995.

Schwartz also argues that Prudential's denial of her benefits concerning fibromyalgia was unreasonable because her rheumatologist, Dr. Pangan, identified 11 tender points of her fibromyalgia, yet Dr. Kneapler, Prudential's independent medical evaluator on Schwartz's second appeal, failed to discuss these tender points. Schwartz argues that Prudential unreasonably disregarded Dr. Pangan's diagnosis.[3] Although Dr. Kneapler did not refer to Dr. Pangan's identification of 11 tender points, Dr. Kneapler addressed Schwartz's diagnosis of fibromyalgia in detail, reviewing Dr. Pangan's report and agreeing with Dr. Gogoneata's description that Schwartz had "classic signs of fibromyalgia." (Joint App., at 000231-233.)

In any event, evidence in the record supports the conclusion that Prudential offered a reasoned explanation in upholding its denial of benefits on Schwartz's second appeal. *See Houston,* 390 F.3d at 995. Specifically, Prudential based its conclusion on other factors in Dr. Kneapler's report, including medical reports concerning Schwartz's Crohn's disease and Schwartz's normal EMG records. Further, Prudential relied on Dr. Kneapler's evaluation of Dr.

---

[3] Schwartz makes a similar argument as to Dr. Thurman's assessment on her first appeal. Schwartz did not submit Dr. Pangan's report, however, until after Prudential decided her first appeal. (Pl.'s Stmt. ¶ 39.)

Pangan's findings, accepting her diagnosis of sacroiliitis and ankylosing spondylitis as contributors to Schwartz's back pain. Finally, Prudential relied on other medical documentation in the claim file, such as Dr. Thurman's report, in making its determination that Schwartz did not qualify for long-term disability benefits.

### B. Evidence of a Worsening Condition

Next, Schwartz contends that Prudential engaged in arbitrary and capricious decision-making by requiring her to show a significant worsening of her condition. Specifically, in its May 29, 2002, letter to Schwartz denying her initial claim for benefits, Prudential explained "that you have been able to work with your current medial [sic] condition in the past and there is no indication that there has been a significant change in condition that would prevent you from performing your occupation as a legal secretary."[4]

In support of her argument, Schwartz relies on *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914 (7th Cir. 2003). In *Hawkins*, the plan declined a claimant's request for long-term disability benefits for two reasons, (1) the claimant's activities questionnaire indicated that he had a greater ability to work than his treating physician indicated, and (2) the plan's medical consultant concluded that the claimant was not totally disabled based on the claimant's medical records. *Id.* at 916. In this context, the Seventh Circuit rejected the plan's argument that because the claimant had suffered from fibromyalgia for seven years prior to filing a disability claim, he could not be disabled under the policy without proof that his medical condition worsened. *Id.* at 918; *but see Perlman*, 195 F.3d at 982 (plan administrator's reliance on

---

[4] Although Prudential's October 21, 2002, letter to Schwartz mentions that she had previously worked while suffering from Chron's disease and fibromyalgia, this comment, alone, was not the basis of Prudential's denial of long-term disability on Schwartz's first appeal. (*See* Joint App., at 000139.)

12

attorney's successful performance after accident without worsening condition not unreasonable).

The *Hawkins* court then turned to the independent medical consultant's report which stated in relevant part:

> Although Ms. [sic] Hawkins has been diagnosed with fibromyalgia, the majority of individuals with fibromyalgia are able to work.... According to a personal activities questionnaire, ... Mr. Hawkins reported that he was able to take classes and undergo pool therapy.... There are no objective findings to support restrictions.... Although Mr. Hawkins has various subjective complaints, he has been able to perform various extracurricular activities, including pursuing further education. The diagnosis of fibromyalgia does not, in and of itself, produce permanent impairment.... [I]ndividuals with chronic pain benefit when their lives have purpose and meaning. Although Mr. Hawkins may report an increase in subjective pain complaints on a return to work, an inability to work within the guidelines ... is not objectively supported in the medical records.

*Id.* at 918-19. The Seventh Circuit found this report unsatisfactory because the references were vague and the examiner placed too much weight on objective as opposed to subjective evidence of pain. *Id.* at 919. It concluded that although this was a close case under the deferential review of the plan's determinations, the record did not support the plan's conclusion because the record contained "nothing more than scraps" to offset the evidence presented by the claimant and his treating physician. *Id.*

As *Hawkins* instructs, requiring Schwartz to provide proof that her medical condition had worsened is not required under the circumstances. Nonetheless, Prudential did not base its determinations on Schwartz's first and second appeal on the original assessment requiring proof of a worsening position. The record contains significantly more than "scraps" to offset the evidence presented by Schwartz. Specifically, pursuant the Department of Labor regulations, Prudential requested two medical consultants to review Schwartz's claim in her appeals. *See* 29 C.F.R.

13

2560.503-1(h)(3)(iii).[5] Drs. Thurman and Kneapler reviewed Schwartz's medical claim file, including records from Loyola Hospital and Hinsdale Hospital, Schwartz's treating physicians, and Schwartz's activities questionnaires in concluding that the medical evidence did not support impairment from her regular occupation at the time she stopped working. Prudential has offered a reasoned explanation based on the medical record in denying Schwartz's claim for long-term disability benefits, and thus Prudential's determination was not "downright unreasonable." *See Houston* 390 F.3d at 995; *Tegtmeier,* 390 F.3d at 1045.

### C. Schwartz's Impairments in Combination

Schwartz next contends that Prudential's assessment of her impairments "was utterly deficient due to its failure to consider how all of her impairments in combination precluded her ability to work." In other words, Schwartz argues that Drs. Thurman and Kneapler reviewed her medical impairments in isolation. The record, however, does not support Schwartz's argument.

In its initial review, Prudential relied on Schwartz's claim form, Dr. Neri's assessment, and medical reports from Schwartz's other treating physicians, including Drs. Gogoneata, Janda, and Melvani. Later in the appeal process, Schwartz supplemented her claim file with Dr. Pangan's report. During the appeal process, Prudential consulted two outside examiners, Drs. Thurman and Kneapler, to review Schwartz's entire medical claim file. These independent physicians examined all of her impairments, including her episode of acute pancreatitis in December of 2001 and her diagnoses of sacroiliitis and ankylosing spondylitis. (Joint App., at 000147.) They also carefully considered Schwartz's symptoms associated with Crohn's disease, fibromyalgia, and arthritis. In addition, the record contains notations to Schwartz's prescription medication regimen. (Def.'s

---

[5] Section 2560.503-1(h)(3)(iii) does not require plan administrators to consult with independent health care professionals when making initial disability determinations.

Stmt. ¶ 91.) Further evidence of Dr. Kneapler's assessment of Schwartz's various impairments in combination is in his report to Prudential, "but, even all her conditions combined would not make her disabled for her usual and customary occupation." (Joint App., at 000233.)

Contrary to Schwartz's unsupported argument, Prudential considered Schwartz's impairments as a whole and offered a reasoned explanation based on the record when denying Schwartz's request for long-term disability benefits. *See Houston* 390 F.3d at 995.

### D. Basis for Final Eligibility Determination

The physical requirements of Schwartz's job as a legal secretary included "lifting, carrying, pushing, pulling 10 lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time." (Joint App., at 000134.)[6] Schwartz thus argues that Prudential failed to provide any basis for its conclusion that despite significant limitations to her ability to sit, Schwartz could nonetheless work as a legal secretary.

Prudential, however, also discussed Schwartz's ability to work as a legal secretary with reasonable accommodations. Dr. Kneapler opined that Schwartz's morning stiffness of one or two hours "might make it difficult for her to move or sit easily earlier in the morning, which could also be easily accommodated." (Joint App., at 000233). Based on this assessment, Dr. Kneapler recommended that reasonable accommodations such as a comfortable chair and no prolonged sitting would assist in Schwartz's return to work. (*Id.*) Consequently, Prudential notified Schwartz's counsel in its February 27, 2003, letter that "[a]s part of this policy, Prudential does provide a one-time benefit for work site modifications as part of a plan for returning to work with her employer. If Ms. Schwartz is interested in assistance in returning to work, she should contact

---

[6] On the original claim forms, Dr. Neri, Schwartz, and Sachnoff all indicated that Schwartz's work as a legal secretary was sedentary.

this office." (*Id.* at 000148.)

Relying on *Saffle v. Sierra Pacific Power Co.*, 85 F.3d 455 (9th Cir. 1996), Schwartz argues that hypothetical workplace accommodations cannot form the basis for denying disability benefits. In *Saffle*, the Ninth Circuit reviewed the specific definition of "totally disabled" in the plan at issue when concluding that because the definition did not discuss accommodations, the plan administrator could not consider accommodations in its determination. *Id.* at 459. Here, the Plan speaks to "modifications." The definition of "disability" includes the requirement that claimant is "unable to perform the material and substantial duties of your regular occupation." (Pl.'s Stmt. ¶ 10.) "Material and substantial duties" means duties that "are normally required for the performance of your regular occupation" which "cannot be reasonably omitted or modified." (*Id.*) Thus, the Plan allows for modifications of the claimant's "material and substantial duties." Accordingly, Prudential did not err in taking Dr. Kneapler's suggestions into consideration when determining that Schwartz was not disabled under the language of the Policy.

Moreover, as discussed in detail throughout this opinion, Prudential offered reasoned explanations based on the medical evidence when denying Schwartz's claim for long-term disability benefits. Based on the entire record, Prudential's decision to deny long-term disability benefits cannot be characterized as arbitrary and capricious, and thus Prudential's decision did not violate ERISA. *See Militello*, 360 F.3d at 687.

## CONCLUSION

For these reasons, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

Dated: March 8, 2005

                              **ENTERED**

                              _____
                              **AMY J. ST. EVE**
                              **United States District Court Judge**